

**ORDERED in the Southern District of Florida on January 28, 2022.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                    Case No. 15-21654-EPK

**FREDERICK J. KEITEL, III,**                 Chapter 7

    **Debtor.**
_____/

## ORDER DENYING MOTION TO REOPEN CASE

This matter came before the Court for hearing on January 26, 2022 upon the *United States Trustee's Ex-Parte Motion to Reopen Case and for Appointment of a Trustee* [ECF No. 1472] (the "Motion"). At the close of the hearing, the Court announced a ruling. However, after the hearing, the Court closely reviewed the applicable precedent in this circuit and determined that the Court's initial view on the matter was in error. For the reasons stated below, the Court will deny the Motion.

In the Motion, the United States Trustee asks the Court to reopen this chapter 7 case under 11 U.S.C. § 350(b). The debtor, Frederick J. Keitel, III, and four corporate entities apparently acting under his claimed authority, filed suit in the Southern District of New York against the former chapter 7 trustee and his court-approved counsel among a number of other

defendants. The United States Trustee asks the Court to reopen this case "to seek clarification of the Court's order regarding the Debtor's actions in New York." By this, the United States Trustee asks the Court to rule that Mr. Keitel and the entities apparently acting through him failed to seek authority from this Court under the so-called *Barton* doctrine, and that the Court should direct them to dismiss the suit as against the former trustee and his counsel.

Richard B. Webber, II, the former chapter 7 trustee, appeared at the hearing on behalf of himself and his firm and joined in the Motion. Mr. Webber stated that if this case is reopened, he intends to file a motion asking the Court to hold Mr. Keitel in contempt for filing the suit in New York without first seeking authority from this Court. Mr. Keitel objected, citing 11th Circuit case law the Court will address below.

Mr. Keitel filed a voluntary chapter 11 petition on June 29, 2015. The Court converted his case to chapter 7 on November 16, 2016. ECF No. 410. The United States Trustee appointed Richard B. Webber, II, as chapter 7 trustee, and Mr. Webber retained his law firm as counsel to the trustee.

There was an unusual amount of contentious litigation during the administration of this case. In the end, to a great extent due to Mr. Keitel's obstruction of the trustee and extreme litigiousness, there was no distribution to unsecured creditors. The case was administratively insolvent, with only a tiny portion of administrative expenses paid. The Court discharged the trustee, entered a final decree, and closed the case in May 2020. ECF No. 1468.

Well over a year later, on October 15, 2021, Mr. Keitel and four corporate entities filed an action in the United States District Court for the Southern District of New York, styled Frederick J. Keitel, III, et al., v. Thomas B. D'Agostino, Sr., et al., case number 1:21-cv-08537 (the "New York Action"). The former trustee filed a copy of the complaint here. ECF No. 1477.

Included among numerous defendants are the former chapter 7 trustee and his court-approved counsel -- Richard B. Webber II; Zimmerman, Kiser & Sutcliffe, P.A.; Bradley Anderson, Esq.; and Kevin P. Robinson, Esq. (together, the "Trustee Defendants").

The Court has twice held Mr. Keitel in contempt, including for previously filing suit against the trustee and trustee's counsel without the Court's authority during the pendency of his chapter 7 case. ECF Nos. 907 and 1405. Those orders provide a useful history of this case and Mr. Keitel's often shocking behavior. As the Court stated during the hearing on the Motion, the New York Action is a continuation of Mr. Keitel's inappropriate actions in this Court, for which he was twice held in contempt.  In part because of his actions in this case, Mr. Keitel was permanently disbarred by the Florida Supreme Court.

Although the Motion, on its face, asks only that the Court reopen the case and appoint a trustee, the Courts finds it appropriate to consider the underlying reason why the United States Trustee and the former trustee want the Court to reopen the case. The question is whether Mr. Keitel and those acting through him were required to first seek authority from this Court before filing the New York Action against the Trustee Defendants.  If the answer is that they were not, then there is no reason for the Court to reopen this case.

In *Barton v. Barbour*, 104 U.S. 126 (1881), the Supreme Court ruled that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Id*. at 128. In so ruling, the Supreme Court focused on the effect a suit against the receiver would have on the property held in the receivership. To permit a suit against the receiver in another court would allow the claimant "to obtain some advantage over the other claimants upon the assets in the receiver's hands." *Id*.  The rule stated in *Barton* was intended to protect the receivership estate and preserve the central oversight of that estate in the appointing court.

In *Carter v. Rodgers*, the 11th Circuit first applied the *Barton* doctrine. 220 F.3d 1249 (11th Cir. 2000). Rather than a receivership, as in *Barton* itself, *Carter* involved a bankruptcy case. Citing decisions from six other circuits, the court ruled that "a debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity." *Id*. at 1252. The court cited and quoted the 7th Circuit's decision in *Linton*, ruling that a trustee in bankruptcy is like a receiver as the trustee "is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code." *Id*. (quoting *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998)). As the Supreme Court did in *Barton*, the 11th Circuit focused on the effect of a suit elsewhere on the estate administered by the trustee and under the supervision of the bankruptcy court.

In *Carter*, the 11th Circuit included an extensive quote from *Linton* stating the policy behind the leave of court requirement. That quote reads as follows:

> If [the trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded . . . Without the requirement [of leave], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive . . . Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively.

*Id*. at 1252-53 (quoting *In re Linton*, 136 F.3d at 545). Considering the court's analysis of the potential impact of the suit on distributions in the bankruptcy case, it appears the bankruptcy was still pending when the 11th Circuit ruled in Carter. *See id*. at 1253-54. Even so, taking the court's policy statement at face value, one would have no reason to believe the leave of court requirement would terminate upon the closing of a bankruptcy case after administration or even after outright dismissal. If the policy is aimed at ensuring the

availability of competent trustees and reducing the expense of administration, those goals are served by extending the *Barton* doctrine after the bankruptcy case is closed or dismissed.

In *Lawrence v. Goldberg*, the 11th Circuit again addressed the *Barton* doctrine in the bankruptcy context. 573 F.3d 1265 (11th Cir. 2009). Summarizing the holding in *Barton*, the court stated that permitting a suit against a receiver in another court would constitute a "usurpation" of the power of the appointing court.  *Id.* at 1269 (quoting *Barton*, 104 U.S. at 136).  In *Lawrence*, the 11th Circuit extended the protection of the doctrine to court-approved counsel, other court-approved professionals, and even certain creditors the court found to have functioned as court appointed officers. *Id.* at 1270. Applying the usual standard from *Miller v. Kemira, Inc. (In re Lemco Gympsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990), the 11th Ciruit determined that the bankruptcy court had subject matter jurisdiction over the claims against the trustee, counsel, and other parties, because "the outcome of [the] civil suit clearly could have an effect on the handling and administration of [the] bankruptcy estate." *Lawrence*, 573 F.3d at 1271.

As in *Carter*, in *Lawrence* the 11th Circuit includes the extensive quote from *Linton*, set out above, stating the policy reasons behind the leave of court requirement. The underlying chapter 7 case remained pending at the time of the 11th Circuit decision in *Lawrence*. *Id.* at 1267 (stating the chapter 7 case was "ongoing"). Nevertheless, it would seem that, because the doctrine was aimed in part at preserving a pool of experienced trustees and professionals to serve in bankruptcy cases, and reducing the cost of administration of those cases, the doctrine would survive the end of the bankruptcy case.

In the past two years, the 11th Circuit issued two decisions addressing the *Barton* doctrine that call into question its applicability after termination of a bankruptcy case. *Tufts v. Hay* arose in connection with a bankruptcy case. 977 F.3d 1204 (11th Cir. 2020). *Chua v.*

*Ekonomou* arose in connection with state court receivership. 1 F.4th 948 (11th Cir. 2021).  At the hearing, Mr. Keitel cited these decisions in opposition to the Motion.

*Tufts* involved a suit by counsel, who thought he had been properly approved to represent a bankruptcy estate, against the court-approved counsel who had allegedly misled him on that count. 977 F.3d at 1207. In setting out the legal standard, the 11th Circuit describes the Supreme Court's ruling in *Barton* as it did in *Carter* and *Lawrence*, citing those decisions.  *Id*. at 1208.

In *Tufts*, the 11th Circuit ruled that "the *Barton* doctrine has no application when jurisdiction over a matter no longer exists in the bankruptcy court." *Id*. at 1209. Looking back to the Supreme Court's decision in *Barton*, the 11th Circuit reasoned that when the bankruptcy court retains no powers and duties relating to the bankruptcy estate, there are no powers and duties to be usurped by the action pursued elsewhere.  *Id*. (citing *Barton*, 104 U.S. at 136). When the bankruptcy court's exclusive *in rem* jurisdiction over the bankruptcy estate and related powers and supervisory responsibilities come to an end, the *Barton* doctrine no longer applies. *Id*. (citations omitted).

In *Tufts*, it was obvious that the suit between the lawyers could have no conceivable effect on the bankruptcy estate as the bankruptcy case had been dismissed. The parties conceded as much. 977 F.3d at 1209. The court ruled that the *Barton* doctrine did not apply and the suit was not subject to dismissal on that ground. *Id*. at 1210, 1212. However, the court also stated: "We expressly note that our holding here creates no categorical rule that the *Barton* doctrine can never apply once a bankruptcy case ends." *Id.* at 1210. This reservation is not surprising. The Court often is asked to reopen a previously completed bankruptcy case under 11 U.S.C. § 350(b) to permit administration of an undisclosed asset, for example. Such reopening may trigger application of the *Barton* doctrine where it

otherwise might not have applied.  This is just one example of why a categorical statement that *Barton* does not apply after the end of a bankruptcy case would be inappropriate.

Footnote 4 in *Tufts* signals a change in the 11th Circuit's view with regard to the *Barton* doctrine, a change that came to fruition in the most recent decision discussed below. This is the entire text of footnote 4:

> We are aware that some of our sister circuits apply the *Barton* doctrine after the bankruptcy case has ended. *See Muratore v. Darr*, 375 F.3d 140, 147 (1st Cir. 2004); *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998). Indeed, we read these cases to identify important policy reasons for applying the *Barton* doctrine in that context. For example, the *Barton* doctrine "enables bankruptcy judges to monitor the work of the trustees more effectively" and, absent the *Barton* doctrine, "trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees." *Linton*, 136 F.3d at 545. This Court has also recognized these concerns in other contexts. *See Lawrence*, 573 F.3d at 1269. We accept as meritorious these policy reasons calling for application of the *Barton* doctrine, and our decision today does not conflict with the views of our sister circuits in this regard.

977 F.3d at 1210 n.4.  Here, the court begins by stating that other circuits have specifically applied the *Barton* doctrine after the end of a bankruptcy case. The court cites *Linton*, the 7th Circuit decision it quoted at length in *Carter* and *Lawrence*. The court then reiterates the policy considerations stated in *Linton* and previously relied on by the 11th Circuit in the decisions discussed above. The court cites *Lawrence*, noting that the 11th Circuit "has also recognized these concerns in other contexts." By "other contexts" it appears the court means in the context of a still pending bankruptcy case rather than one that has ended. The court states that the policy considerations are "meritorious" and that its decision "does not conflict with the views of our sister circuits in this regard." It is difficult to understand how the ruling in *Tufts* does not conflict with the policy concerns relied on in *Linton* (and seemingly in *Carter* and *Lawrence*). The court in *Tufts* ruled that the court-appointed bankruptcy counsel was <u>not</u> protected by the *Barton* doctrine.  977 F.3d at 1208-10.

The 11th Circuit's most recent decision on the *Barton* doctrine is *Chua v. Ekonomou*, 1 F.4th 948 (11th Cir. 2021). *Chua* unveiled a significant change in 11th Circuit precedent on the issue. The case involved a state court receivership, rather than a bankruptcy, but the court's analysis applies equally in the bankruptcy context. Indeed, many of the decisions cited by the court are bankruptcy decisions, and the court's discussion of the issues regularly references bankruptcy as a parallel context for the ruling. The facts of *Chua* are complex and, to a great extent, are not necessary to the Court's analysis here. Importantly, however, the underlying receivership had been terminated. *Id.* at 953.

In *Chua*, the 11th Circuit includes an introduction to the *Barton* doctrine, describing the Supreme Court's ruling in a manner similar to that presented in the other decisions discussed above. *Id.* The court then reviews its prior decisions, *Carter*, *Lawrence*, and *Tufts*. *Id.* at 953-54. In its review of the Supreme Court decision and its own prior decisions, the court stresses that the *Barton* doctrine centers around the *in rem* jurisdiction of the bankruptcy or receivership court: "It follows that when there is no longer a *res* controlled by a single court, there is no longer a potential conflict in the exercise of jurisdiction over it. And the court that first exercised jurisdiction over the *res* may no longer exclude other courts from exercising jurisdiction." *Id.* at 954.

The 11th Circuit notes that other circuit courts have applied the *Barton* doctrine after the end of a bankruptcy case to protect a trustee from suit. *Id.* After citing several decisions from other circuits, the court then cites *Linton* where the 7th Circuit set out the policy considerations the 11th Circuit quoted at length in both *Carter* and *Lawrence*. *Id.* In *Chua*, however, the 11th Circuit specifically rejects the policy considerations outlined in *Linton* as a basis to apply the *Barton* doctrine:

> We disagree with our sister circuits that the need to protect court-appointed receivers and bankruptcy trustees is relevant to the *Barton* doctrine. Their opinions fail to grapple with the fact that the *Barton* doctrine is grounded in

the exclusive nature of *in rem* jurisdiction. The need to attract qualified individuals to serve as receivers and bankruptcy trustees might be a legitimate policy concern, but it has nothing to do with subject-matter jurisdiction. Although our previous decisions discussing the *Barton* doctrine have credited this policy concern, they have done so only in dicta. *See Tufts*, 977 F.3d at 1210 n.4; *Lawrence*, 573 F.3d at 1269; *Carter*, 220 F.3d at 1252-53. This policy concern is unfounded because court-appointed receivers enjoy judicial immunity for acts taken within the scope of their authority. *Property Management & Invest., Inc. v. Lewis*, 752 F.2d 599, 602 (11th Cir. 1985). Receivers do not need the *Barton* doctrine to provide an additional layer of protection for the performance of their duties.

1 F.4th at 954-55.

Following *Chua*, it is not appropriate to apply the *Barton* doctrine primarily as a prophylactic measure to protect bankruptcy trustees and other representatives of the bankruptcy estate. To determine when the doctrine requires a bankruptcy court to authorize suit, the sole question is whether the bankruptcy court has subject matter jurisdiction over the matter presented in the suit. The *Barton* doctrine applies only where the suit would have a conceivable effect on the administration of the bankruptcy estate.

During the hearing on the Motion, the Court suggested that it has jurisdiction over the claims presented in the New York Action against the Trustee Defendants. After careful consideration of the complaint in light of the case law discussed above and the context of this case, the Court reaches the opposite conclusion. This chapter 7 case has been closed since May 2020. The bankruptcy estate was fully administered. The outcome of the New York Action against the Trustee Defendants cannot impact distributions in this case as there are no longer any assets to distribute. The suit could not impact administration of this case as it is fully administered. The Court lacks subject matter jurisdiction over the claims brought against the Trustee Defendants. As a result, under existing 11th Circuit precedent, the *Barton* doctrine does not apply.

The Trustee Defendants are not without a remedy. In addition to any other defenses they may have, and there appear to be several as the Court noted during the hearing on the

Motion, the Trustee Defendants may seek dismissal based on judicial immunity. In *Chua*, the 11th Circuit relied on judicial immunity to dismiss all claims against the former receiver and counsel. 1 F.4th at 955. The Trustee Defendants obtain judicial immunity for acts within the scope of their authority, even if those acts are in error, malicious, or exceed the jurisdiction of the bankruptcy court. *Id.* Judicial immunity must be raised as a defense to an action and so it is not appropriate for this Court to rule on the issue here. The Trustee Defendants must raise it in the New York Action.

Because this Court is unable to accord the relief the United States Trustee and the Trustee Defendants would seek after reopening this case, there is no cause to reopen this case.

For the foregoing reasons, the Court ORDERS and ADJUDGES that the Motion [ECF No. 1472] is DENIED.

###

Copies to all parties in interest by the Clerk.